Case No. 1:24-cv-06408

---

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

---

### PLATFORM II LAWNDALE LLC,

*Appellant,*

v.

### GREENLAKE REAL ESTATE FUND, LLC, *et al.*,

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

---

### BRIEF FOR APPELLANT
### PLATFORM II LAWNDALE LLC

---

Kevin A. Sterling (#6216907)
Laura Newcomer Cohen (#6302639)
THE STERLING LAW OFFICE LLC
112 S. Sangamon, Suite 101
Chicago, Illinois 60607
Ph: (312) 670-9744
kevin@thesterlinglaw.com
laura@thesterlinglaw.com

*Counsel for the Appellant*

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS**.........................................................................i

**TABLE OF AUTHORITIES**...............................................................iii

**JURISDICTIONAL STATEMENT**....................................................1

**STATEMENT OF ISSUES PRESENTED**..........................................1

**STANDARD OF APPELLATE REVIEW** ..........................................2

**STATEMENT OF THE CASE** ...........................................................2

    A.   The Relationship between Debtor and GreenLake.....................................3

    B.   Debtor's attempted plan of reorganization...................................................3

    C.   February 14, 2024 Hearing - Bankruptcy Court dismisses
          Bankruptcy Case with Prejudice ..................................................5

    D.   Debtor returns the disclosed Plan Investments to the
          Plan Investors and continues to operate.......................................7

    E.   March 4, 2024 – GreenLake files Motion for Rule to Show Cause........... 8

    F.   May 15, 2024 Hearing - Bankruptcy Court Orders an Accounting...........10

    G.   June 5, 2024 Hearing – Bankruptcy Court sets Contempt Hearing
          despite Debtor providing accounting. ........................................11

    H.   July 10, 2024 Contempt Hearing and the Order Presented
          for Review: Order Holding Debtor in Contempt and Barring
          Refiling for 180 days. ...............................................................12

    **SUMMARY OF THE ARGUMENT** .................................................14

**ARGUMENT**.................................................................................. 15

I.   The Bankruptcy Court erred in finding that Platform failed to comply with the Dismissal Order, which did not contain an unambiguous command. ................................................................16

II.  There were objectively reasonable bases to conclude that Debtor's payments and return of investor funds might be lawful, and finding Debtor in contempt for paying and returning non-Debtor funds is reversible error. ..........................................................................18

    A.  If an objectively reasonable basis exists for concluding that Debtor's conduct might be lawful, there can be no finding of contempt. ..................................................... 19

    B.  Objectively reasonable bases existed for concluding that Debtor's conduct was lawful. ................................... 20

III. The Court erred in finding that Debtor failed to purge the contempt............ 21

IV.  The Bankruptcy Court abused its discretion in barring Debtor from refiling a chapter 11 petition for a period of 180 days because there was no finding that Debtor willfully abused the judicial process................ 22

**CONCLUSION** ....................................................................... 24

**CERTIFICATE OF COMPLIANCE**................................................. 26

**CERTIFICATE OF SERVICE**......................................................... 27

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*D. Patrick, Inc. v. Ford Motor Co.,*
    8 F.3d 455, 460 (7th Cir. 1993) ................................................................. 16, 21

*Fuery v. City of Chi.*,
    900 F.3d 450, 463 (7th Cir. 2018) ....................................................................23

*In re Gibas*,
    543 B.R. 570, 600 (Bankr. E.D. Wis. 2016)......................................................24

*In re Bowens*,
    656 B.R. 883 (Bankr. N.D. Ill. 2024)................................................................19

*In re Johnson,*
    148 B.R. 532, 538 (Bankr. N.D.Ill. 1992)........................................................19

*In re Roth*,
    935 F.3d 1270, 1278 (11th Cir. 2019) ..............................................................19

*In re Taylor*,
    793 F.3d 814, 818 (7th Cir. 2015) ......................................................................2

*In re Wolf*,
    644 B.R. 725, 736 (N.D. Ill. 2022) ....................................................................2

Marrocco v. Gen. Motors Corp.,
    966 F.2d 220, 224 (7th Cir. 1992) ....................................................................23

*Matter of Neis*,
    723 F.2d 584, 588 (7th Cir. 1983) ......................................................................2

*NLRB v. Neises Constr. Corp.*,
    62 F.4th 1040, 1052-53 (7th Cir. 2023).......................................................16, 21

*Ramirez v. T&H Lemont, Inc.*,
    845 F.3d 772, 776 (7th Cir. 2016) ....................................................................23

| Cases | Page(s) |
|---|---|

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
 91 F.3d 914, 920 (7th Cir. 1996) ......................................................................22

*Stamat v. Neary*,
 635 F.3d 974, 979 (7th Cir. 2011) ....................................................................2

*Stotler and Co. v. Able,*
 870 F.2d 1158, 1163 (7th Cir. 1989) ........................................................ 16, 21

*Taggart v. Lorenzen*,
 587 U.S. 554, 565 (2019) ......................................................................... 15, 19

*United States SEC v. Hyatt*,
 621 F.3d 687, 692 (7th Cir. 2010) ....................................................................15

*United States Sec. and Exch. Comm'n v. Hyatt*,
 621 F.3d 687, 692 (7th Cir. 2010) ....................................................................19

**Statutes**

11 U.S.C. § 349(a)...........................................................................................23

11 U.S.C. §109(g)(1)........................................................................................23

28 U.S.C. § 158(a) ............................................................................................2

## JURISDICTIONAL STATEMENT

This case is an appeal from the United States Bankruptcy Court in the matter of *In re: Platform II Lawndale LLC*, Case No. 22-07668, which was heard before Bankruptcy Court Judge Deborah Thorne. Debtor-Appellant Platform II Lawndale LLC ("**Debtor**") appeals the Bankruptcy Court's July 10, 2024 Order holding Debtor in contempt and barring Debtor from refiling a chapter 11 petition in any bankruptcy court for a period of 180 days. [Appendix ("A") A008].

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §158(a) as an appeal from the Bankruptcy Court's final order finding Debtor in contempt and imposing sanctions.The appeal was timely perfected by the filing of Debtor Notice of Appeal on July 24, 2024. [A001].

## STATEMENT OF ISSUES PRESENTED

1) Whether the Bankruptcy Court erred in finding that Debtor failed to comply with the Court's February 14, 2024 Order [A007], which stated, *inter alia*, that the bankruptcy was dismissed with prejudice, and that upon the reappointment of a receiver in a pending state court case, all funds held in any of the Debtor's bank accounts were to be turned over to the receiver.

2) Whether the Bankruptcy Court erred in holding Debtor in contempt when certain funds were transferred by Debtor prior to the reappointment of the receiver.

1

3)      Whether the Court erred in finding that Debtor failed to purge the contempt.

4)      Whether the Court erred in entering a penalty against Debtor, barring Debtor from refiling a chapter 11 petition for a period of 180 days.

## STANDARD OF APPELLATE REVIEW

When deciding an appeal from the bankruptcy court, the district court sits as an appellate court. See 28 U.S.C. § 158(a); *Matter of Neis*, 723 F.2d 584, 588 (7th Cir. 1983). On appeal, civil contempt findings are reviewed for an abuse of discretion. *In re Taylor*, 793 F.3d 814, 818 (7th Cir. 2015). This Court reviews a bankruptcy court's factual findings under a clearly erroneous standard and legal findings under a *de novo* standard. *In re Wolf*, 644 B.R. 725, 736 (N.D. Ill. 2022) (citing *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011)).

## STATEMENT OF THE CASE

Debtor Platform II Lawndale, LLC is an Illinois limited liability company that owns a self-storage facility at 1750 North Lawndale Avenue in Chicago's West Logan Square neighborhood (the "**Property**"). *See Chapter 11 Petition* [A020]. On July 11, 2022 (the "**Petition Date**"), Debtor commenced the bankruptcy case underlying this appeal, Case No. 22-07668 (the "**Bankruptcy Case**") by filing a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. *Id.* [A008].

### A. The Relationship between Debtor and GreenLake.

Appellee GreenLake Real Estate Fund, LLC ("**GreenLake**") is a secured creditor that purports to hold a first-priority, perfected security interest in the Property, as well as, *inter alia*, certain leases, rents, income, proceeds, issues and profits related to the Property. *See* Toosley Verif. ¶ 3 [A114]. Before the Petition Date, the onset of the pandemic interfered with the Debtor's efforts to lease the self-storage facility. *See* Debtor's Motion to Use Cash Collateral, ¶ 5 [A026].  Due to the Debtor's inability to generate sufficient rental revenue, it could not service its debt. *Id.*

Prior to the Petition Date, GreenLake had filed a state court foreclosure action (the "**Foreclosure Action**") against, *inter alia*, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969. *See* Toosley Verif. ¶ 4 [A114]. On or about September 18, 2020, a receiver for the Property (the "**Receiver**") was appointed in the Foreclosure Action. *Id.* ¶ 5 [A115].  A foreclosure sale was scheduled to occur on July 12, 2022. *See* Motion for Rule ¶ 3 [A107]. Prior to that sale, Debtor filed its Petition. *Id.*

### B.  Debtor's attempted plan of reorganization.

On December 7, 2022, Debtor's counsel transmitted a draft proposed plan of reorganization to GreenLake's counsel, under which Debtor proposed a resolution of debts owed to GreenLake and other creditors. *See* Krone Decl. ¶ 4 [A167]. The

3

proposed plan contemplated the contribution of new monies by investors, subject to funding of the third-party loan. *Id.* ¶ 5 [A167].

On September 15, 2023, Debtor filed an Amended Plan of Reorganization (the "**Amended Chapter 11 Plan**"), under which Debtor would close on a new loan with a third-party lender to make payments to GreenLake and other creditors. [A044]. The Amended Chapter 11 Plan was approved by the Court on October 26, 2023, "effective on the funding of the loan to Platform II Lawndale LLC required to make the initial distribution to GreenLake Real Estate Fund, LLC." [A097]. It was intended that the closing would occur by mid-November 2023. *See* Toosley Verif. ¶ 11 [A115]. The effective date was subject to a separate closing occurring between Debtor and a third-party lender. *Id.* ¶ 10 [A115].

Under the Amended Chapter 11 Plan, investors who contributed new monies to fund the proposed Amended Chapter 11 Plan (the "**Plan Investors**") would hold membership interests. *See* Amended Chapter 11 Plan, p. 15 [A058]. In anticipation of the third-party loan and Amended Chapter 11 Plan taking effect, Debtor had begun collecting funds from the Plan Investors after the initial Plan was proposed, and for over the course of a year, had deposited various sums (the "**Plan Investments**") as of December 1, 2023. *See* Krone Decl. ¶ 6 [A167]. On December 20, 2023, when the third-party loan had not funded and the closing had not occurred, GreenLake filed a Motion to Dismiss the Bankruptcy Case. *See* Toosley Verif. ¶ 12 [A115].

4

**C.  February 14, 2024 Hearing - Bankruptcy Court dismisses Bankruptcy Case with Prejudice.**

On January 23, 2024, the Court set the matter to February 14, 2024 for ruling on any open fee applications and for entry of an order on GreenLake's Motion to Dismiss and ordering, *inter alia*, for Debtor to file an accounting of funds received from the Plan Investors for the failed Amended Chapter 11 Plan. [A099]. On February 13, 2024, Debtor filed its statement of Equity Contributions Received to Fund Its Plan of Reorganization (the "**Contribution Statement**") reflecting the amounts deposited by the Plan Investors. [A101].

As reflected in the Contribution Statement, the Plan Investors had deposited the following sums (the "**Plan Investments**") as of December 1, 2023, subject to funding of the third-party loan and the Amended Chapter 11 Plan taking effect:

| Date of Contribution | Plan Investor | Amount |
|---|---|---|
| 12/22/2022 | Northern Trust | $33,667.00 |
| 1/4/2023 | Mercury Capital IRA | $28,000.00 |
| 1/9/2023 | Gillespie | $9,000.00 |
| 1/17/2023 | Banach | $10,941.78 |
| 1/17/2023 | Eleven Vales | $16,833.00 |
| 1/27/2023 | Davis | $7,500.00 |
| 1/18/2023 | Cama SDIRA | $2,494.88 |
| 3/20/2023 | CT Infinity | $4,490.77  [$5k on statement] |
| 11/3/2023 | Yellow Hat | $67,334.00 |
| 11/9/2023 | Banach | $10,941.78 |
| 11/10/2023 | Eleven Vales | $16,833.00 |
| 11/30/2023 | Provident Trust | $77,313.50 |
|  | Total | **285,349.71** |

5

*See* Krone Decl. ¶ 6 [A167-168].

On February 14, 2024, the Bankruptcy Court granted GreenLake's Motion to Dismiss, noting that it was "not really sure what the purpose of [the Bankruptcy Case] case remaining open is. We wanted to get the [state court] receiver in because there is nothing from the building to benefit this estate at this point" (2/14/24 Tr., p. 17:19-24). The Bankruptcy Court also noted with respect to the equity contributions and GreenLake's lien, "[i]t was a lien on receivables, on real estate. It wasn't on folks walking in that simply wanted to be equity . . ." (2/14/24 Tr., p. 18:14-17).

Ultimately, at the February 14th Hearing, the Bankruptcy Court dismissed the Bankruptcy Case with prejudice, stating that it would be "retaining jurisdiction over the [attorneys'] fees. We'll continue those to [March] 6th" (2/14/24 Tr., p. 44:5-6). The Bankruptcy Court entered its *Order on the Motion to Dismiss or Convert Case Pursuant to 11 U.S.C. 1112(b) and Approve Shortened Notice Thereof* (the "**Dismissal Order**"), which ordered, *inter alia*, that:

> 2. [The Bankruptcy Case] shall stay active until such time as the court-appointed receiver is reappointed in the state court foreclosure filed by GreenLake against, inter alia, Debtor in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 2020 CH 02969;
>
> 3. Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver."

[A007].

The Bankruptcy Court also directed Debtor to pay Special Counsel compensation totaling $24,642.72, as well as previously approved compensation. [A103].

### D. Debtor returns the disclosed Plan Investments to the Plan Investors and continues to operate.

Following the dismissal of the Bankruptcy Case on February 14, 2024, Debtor issued a check to Special Counsel in the amount of $39,917.06. *See* Krone Decl. ¶ 8 [A168]. The following day, Debtor returned the Plan Investors' funds identified in the filed Contribution Statement [A101] totaling $285,349.71, which had been deposited by the Plan Investors solely for and in connection with the failed Chapter 11 plan. *See* Krone Decl. ¶ 9 [A168]. Further, on the same day, Debtor issued a check to Special Counsel in the amount of $24,642.72. *Id.* ¶ 10. [A168].

During the period between the dismissal of the Bankruptcy Case and the reappointment of the Receiver, Debtor continued to pay operating expenses from its accounts. *Id.* ¶ 11. [A168]. The Receiver was reappointed in the Foreclosure Action and the bond was approved on February 22, 2024. *See* Motion for Rule, ¶ 16 [A109]. The Receiver then reached out to Debtor's counsel in the state court. *See* Toosley Verif. ¶ 17 [A116].

On March 5, 2024, Debtor wired $15,640.08 to the Receiver, which resulted in $1,365.55 remaining in the Debtor's bank account, to cover payments for utilities for the property. *See* Krone Decl. ¶ 13 [A169]. On March 15, 2024, the Receiver

transferred $5,932.60 back to Debtor to facilitate payment of additional expenses for the Property. *Id.*

### E. March 4, 2024 – GreenLake files Motion for Rule to Show Cause

On March 4, 2024, GreenLake filed a Motion for Rule to Show Cause ("**Motion for Rule**") as to why Debtor should not be held in contempt, asserting that Debtor had allegedly violated the Bankruptcy Court's February 14, 2024 Order. [A107]. Specifically, the Motion for Rule argued that Debtor violated the Bankruptcy Court's order that "[u]pon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver." *Motion for Rule*, ¶ 15. [A109].

GreenLake's Motion for Rule inaccurately stated that, following dismissal of the Bankruptcy Case, Debtor "**took all of the funds out of its Debtor-in-Possession accounts**" in violation of the Court's February 14, 2024 Order. *Id.* ¶ 18 (emphasis added) [A109]. Based on GreenLake's Motion, on March 6, 2024, the Bankruptcy Court entered a Rule to Show Cause as to why Debtor should not be held in contempt for failure to turn over all funds to the State Court Receiver. [A130]. On March 13, 2024, the Bankruptcy Court entered a briefing schedule on the Motion for Rule. [A131].

On March 13, 2024, the Plan Investors filed a Motion to Reconsider in Part Order Dismissing Bankruptcy Case (the "**Motion to Reconsider**"). [A132]. The

Motion to Reconsider sought to clarify the Bankruptcy Court's February 14, 2024 Dismissal Order and set forth numerous rationales for why the Plan Investments could not be viewed as being part of "Debtors' funds" to be turned over to the Receiver in the Foreclosure Action. *Id.* The Plan Investors' Motion to Reconsider was ultimately denied by the Bankruptcy Court. [A150].

Notably, in the Court's Order denying the Motion to Reconsider, the Court attempted to re-characterize its ambiguous February 14, 2024 Order, and stated in relevant part, "The Order clearly does not declare who owns the funds that were present in the Debtor's bank account at the time of the dismissal. Rather, the Order only dismisses the case, essentially delaying the effective date until the state court receiver could be put in place. This would maintain the status quo until the issue of who owns the funds could be brought in the state foreclosure proceeding that had already been allowed to proceed by the Order to Modify the Stay and to Continue the Motion to Dismiss entered on January 23, 2024." [A151].

On April 9, 2024, Debtor filed its Response to Order for Rule to Show Cause, and in support, attached the Declaration of Scott Krone, Manager for Debtor. [A154; A167]. GreenLake filed its Reply in Support of its Motion for Rule on April 24, 2024. [A170].

**F.  May 15, 2024 Hearing - Bankruptcy Court Orders an Accounting**

On May 15, 2024, the Bankruptcy Court heard GreenLake's Motion for Rule and arguments of counsel. (*See* 5/15/24 Tr.). Debtor's counsel raised the issue of ambiguity in the February 14, 2024 Order to transfer funds to the Receiver, pointing out that there was not a clear mandate as to which funds to transfer, or an amount or a balance as of a particular date. (5/15/24 Tr., p. 10:4-21). Ultimately, the Bankruptcy Court acknowledged the ambiguity, stating, "I mean, I guess you could fault me – any money in the account on February 14th will be turned over, because if money went elsewhere between February 14th and the day the receiver was actually appointed, I suppose you could make a very good argument that it was a terrible order and it wasn't precise enough." (5/15/24 Tr., p. 27:4-11). The Court instead relied on a subjective standard in interpreting order, stating "I think your client did violate the **sentiment** that was in this order." (5/15/24 Tr., p. 29:15-16) (emphasis added).

While the Bankruptcy Court did not make a finding of contempt at the May 15th Hearing, the Bankruptcy Court decided that "if you can't turn over the money, I want an accounting." (5/15/24 Tr., p. 14:17-18). GreenLake's counsel requested an accounting for the month of February 2024. (5/15/24 Tr., p. 30:14-19). Debtor's counsel sought to confirm if the accounting would purge the contempt, the Bankruptcy Court indicated, "[w]ell, it will go a long ways towards it" and stated

that "the accounting for the month of February will be furnished to Mr. Toosley on or before the 29th, and I'll have a status on June 5th to see if it's been complied with." (5/15/24 Tr., p. 30:2-22; 37:7-10). The Court entered an *Order Requiring Accounting*, which stated, *inter alia*:

1. [A]ll funds held in any Debtor account from the period of January 31,2024 though February 29, 2024 (Accounting Period) on or before May 29, 2024 and such accounting with supporting documents, including the source of funds and bank statements, and shall be filed on the docket on or before May 29, 2024. The accounting should state to whom or to what account funds were transferred during the Accounting Period.

2. Failure to abide by the terms of this Order may result in a finding of contempt.

[A259].

### G. June 5, 2024 Hearing – Bankruptcy Court sets Contempt Hearing despite Debtor providing accounting.

At the June 5, 2024 status for compliance, GreenLake's Counsel confirmed that it received the February bank statements and stated that Debtor has "now complied with the request for accounting in accordance with Your Honor's last order." (6/5/24 Tr., p. 3:5-7). The accounting showed that funds had been returned via a check to "PIIC[L] Investor Fund." (6/5/24 Tr., p. 10:21-22).

The Bankruptcy Court, however, was not satisfied despite the compliance with her May 15 Order, stating, "I don't feel that my order was complied with, and I am ready to hold Mr. Krone [Debtor's Manager] in contempt for failure to do that."

(6/5/24 Tr., p. 9:23-25). In the Bankruptcy Court's view, the "order was that all of the funds in the debtor's account as of the date of my dismissal be turned over to the state court receiver." (6/5/24 Tr., p. 6:14-16).[1] As pointed out by Debtor's Counsel, the language of the Dismissal Order only stated that "upon reappointment of the receiver, all funds held in the debtor's account shall be turned over to the receiver," and "it doesn't say all funds as of the dismissal." (6/5/24 Tr., p. 8:8-16). Nevertheless, the Bankruptcy Court set the Motion for Rule for a hearing on July 10, 2024, with Mr. Krone to appear on behalf of the Debtor. (6/5/24 Tr., p. 14:1-7).

### H. July 10, 2024 Contempt Hearing and the Order Presented for Review: Order Holding Debtor in Contempt and Barring Refiling for 180 days.

As argued by Debtor's Counsel at the July 10, 2024 hearing, the issue before the Bankruptcy Court was whether there had been a contempt and whether that contempt could be purged. (7/10/24 Tr., p. 20:8-10). The Bankruptcy Court responded that "[a]ll I'm asking for is an accounting . . . my [May 15, 2024] order says . .. the debtor must provide an accounting to Greenlake of all funds held in any debtor account." (7/10/24 Tr. p. 20:13-17). Once GreenLake's counsel confirmed "they did send them," the Bankruptcy Court stated, "Okay, so maybe we're done." (7/10/24 Tr., p. 21:2-4).

---

[1] The Court's explanation during the June 5, 2024 hearing regarding the intent of the February 14, 2024 Order stands in contradiction to its March 13, 2024 Order indicating that the February 14, 2024 dismissal order did not become effective until the state court receiver was appointed.

GreenLake's Counsel, however, nevertheless requested that, "based on what's gone on," that the Bankruptcy Court imposed a six-month ban on refiling "as it related to [Debtor] as a sanction for this sort of action that had been done. (7/10/24 Tr., p. 23:16-24:4). The Bankruptcy Court then entered its *Order Holding Platform II Lawndale LLC in Contempt and Barring Refiling for 180 Days* (the "**Contempt Order**." [A005]. The Contempt Order included the following factual findings:

1. On March 6, 2024, the court entered a Rule to Show Cause as to why the Debtor should not be held in contempt for failure to turn over all funds to the State Court Receiver. . . .

4. The Debtor still failed to comply with the February 14, 2024 Order and the court and the parties are without sufficient knowledge of the funds removed and specifically the identity of the "investor funds" as well as whether any of the funds were derived from rents, subject to Greenlake's security interest.

The Bankruptcy Court ordered that:

A. The Debtor is in contempt for failure to comply with this court's order of February 14, 2024.

B. To date the Debtor has failed to purge the contempt.

C. As a penalty for failure to comply with this court's February 14, 2024 Order and to provide adequate accounting, the Debtor is barred from refiling a chapter 11 petition in any bankruptcy court for a period of 180 days. The Court notes that counsel for the Debtor objected to this penalty but the Court has overruled that objection.

[A005].

This appealed followed.

## SUMMARY OF THE ARGUMENT

On its face, the Bankruptcy Court's February 14, 2024 Dismissal Order was ambiguous with respect to the funds to be turned over by Debtor to a Receiver that would eventually be reappointed in the state Foreclosure Action. Debtor merely paid court-approved attorneys' fees, covered operating expenses of its business, and returned Plan Investor funds, and once the Receiver was reappointed, turned over Debtor's funds in the account.

The Bankruptcy Court, while admitting the language of the Dismissal Order was unclear, nevertheless found that Debtor had failed to comply with the Dismissal Order. Such a finding was an abuse of discretion, given the ambiguity of the Dismissal Order and the resulting objectively reasonable bases for Debtor's conduct. The Bankruptcy Court further erred in finding that Debtor failed to purge any contempt, given that Debtor complied with the Bankruptcy Court's subsequent orders to provide an accounting of the returned Plan Investor funds. Lastly, the imposition of the penalty barring Debtor from refiling a chapter 11 petition for a period of 180 days was unfounded because there was no finding that Debtor's violation of the Dismissal Order was willful.

**ARGUMENT**

To obtain a civil contempt finding, there must be clear and convincing evidence that "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *United States SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). Moreover, our Supreme Court has held that disputes about civil contempt must be resolved objectively. *Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019).

As explained below, the Bankruptcy Court found Debtor in contempt for failing to comply with its February 14, 2024 Dismissal Order [A005], but such order did not set forth an unambiguous command. The Dismissal Order provided that Debtor was to turn over funds in its account once the Receiver was re-appointed in the Foreclosure Action. The Dismissal Order *did not specify* what funds as of what date. Debtor did not violate any express prohibition, and in fact, complied with the Dismissal Order by turning over Debtor's funds to the Receiver and fulfilling subsequent commands of the Bankruptcy Court in providing an accounting of the non-Debtor funds returned to the Plan Investors. The Bankruptcy Court erred in finding that Debtor failed to comply with its orders or purge such contempt. The

Bankruptcy Court also erred in imposing a sanction barring Debtor from refiling a chapter 11 petition for a period of 180 days.

> **I. The Bankruptcy Court erred in finding that Platform failed to comply with the Dismissal Order, which did not contain an unambiguous command.**

Contempt requires a court to find that the party violated an unambiguous, specific command. *NLRB v. Neises Constr. Corp.*, 62 F.4th 1040, 1052-53 (7th Cir. 2023); *See also D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 460 (7th Cir. 1993) (ambiguity necessitating extrinsic evidence of intent ruled out the possibility that the respondent has violated the unequivocal command of a court order); *Stotler and Co. v. Able,* 870 F.2d 1158, 1163 (7th Cir. 1989) ("To hold a party in contempt, the district court must be able to point to a decree from the court which set[s] forth in specific detail an unequivocal command which the party in contempt violated."). A party can only be held in contempt for behavior clearly prohibited by a court order "within its four corners." *D. Patrick,* 8 F.3d 455 at 460.

The Dismissal Order contained the following language:

2. . . .shall stay active until such time as the court-appointed receiver is re-appointed in the state court foreclosure filed by GreenLake against, inter alia, the Debtor in the Circuit Court of Cook County Illinois, Chancery Division, Case No. 2020 CH 02969;

3. Upon the reappointment of the receiver, all funds held in any of the Debtor's bank accounts shall be turned over to the receiver.

[A007].

16

Following the dismissal of the Bankruptcy Case with prejudice, on February 14, 2024, Debtor issued checks to Special Counsel in the amounts of $39,917.06 and $24,642.72. *See* Krone Decl. ¶ 10 [A168]. On February 15, 2024, the Plan Investors' funds totaling $285,349.71, previously identified in the filed Contribution Statement [A101], were withdrawn from Debtor's bank accounts to return the Plan Investors. *See* Krone Decl. ¶ 13 [A169]. During the period between the dismissal of the Bankruptcy Case and the appointment of the Receiver, Debtor continued to pay operating expenses from its accounts. *Id.*, ¶ 11 [A168].

In the Foreclosure Action, the Receiver was reappointed, and the bond was approved on February 22, 2024. *See* Motion for Rule, ¶ 16 [A109]. Upon reappointment of the Receiver, Debtor's funds were turned over to the Receiver on March 5, 2024. *See* Krone Decl. ¶ 12 [A169]. Moreover, on March 15, 2024, the Receiver transferred $5,932.60 **back to Debtor** to facilitate payment of additional expenses for the Property. *Id.*

The Dismissal Order contained no express prohibition of conduct and was ambiguous regarding the actual status of the Bankruptcy Case. Indeed, the Dismissal Order, drafted by GreenLake's counsel ambiguously states that "[t]he above-captioned bankruptcy is **dismissed with prejudice, but shall stay active** until such time as the court-appointed receiver is re-appointed in the state court foreclosure." [A007] (emphasis added).

17

Nothing in the Dismissal Order expressly or impliedly imposed a freeze on Debtor's funds, restricted the Debtor from returning the conditionally deposited Plan Investments, or stated what monies were required to be remitted to the then to-be-appointed Receiver. The Bankruptcy Court attempted to recharacterize its Dismissal Order after the fact in its Order Denying the Plain Investor's Motion to Reconsider by adding language that never appeared in the Dismissal Order. [A151] The Bankruptcy Court even eventually conceded the ambiguity, stating, "I mean, I guess you could fault me . . . I suppose you could make a very good argument that it was a terrible order and it wasn't precise enough." (5/15/24 Tr., p. 27:4-11). Instead, the Bankruptcy Court felt that Debtor has merely violated an unstated and undefined "sentiment" in the Dismissal Order. (5/15/24 Tr., p. 29:15-16).

Therefore, the Bankruptcy Court erred in finding that Debtor violated any express prohibition contained in the Order, because no such prohibition existed.

**II. There were objectively reasonable bases to conclude that Debtor's payments and return of Investor Funds might be lawful, and finding Debtor in contempt for paying and returning non-Debtor funds is reversible error.**

Because the Plan Investments were not Debtor's funds (but solely intended for the failed Amended Chapter 11 Plan in the Bankruptcy Case), it was objectively reasonable for Debtor to return those funds, and not include those funds in the amounts turned over to the Receiver in the Foreclosure Action.

### A. If an objectively reasonable basis exists for concluding that Debtor's conduct might be lawful, there can be no finding of contempt.

The Supreme Court has held that disputes about civil contempt must be resolved objectively. *Taggart v. Lorenzen,* 587 U.S. 554, 565 (2019). Specifically, if there is an objectively reasonable basis for concluding that Debtor's conduct might be lawful, there are no grounds to find it in contempt or to impose sanctions. *In re Bowens*, 656 B.R. 883 (Bankr. N.D. Ill. 2024) citing *Taggart*, 587 U.S. at 557. A party seeking a civil contempt order bears the burden of proving facts warranting such relief by clear and convincing evidence. *United States Sec. and Exch. Comm'n v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). It must also be found that the offending party knowingly violated a specific order of the court. *In re Johnson,* 148 B.R. 532, 538 (Bankr. N.D.Ill. 1992).

Under *Taggart*, "civil contempt may be appropriate if there is ***no*** objectively reasonable basis for concluding that the creditor's conduct ***might*** be lawful." *Taggart*, 587 U.S. at 557 (emphasis added). The "*Taggart* standard is a rigorous one…." *In re Roth*, 935 F.3d 1270, 1278 (11th Cir. 2019). Therefore, to hold Debtor in contempt, there must have been "***no*** objectively reasonable basis for concluding that [Debtor's] conduct of returning Investor Funds ***might*** be lawful…." *Taggart*, 587 U.S. at 557 (emphasis added).

19

**B. Objectively reasonable bases existed for concluding that Debtor's conduct was lawful.**

In the instant action, there were objectively reasonable bases to conclude the Dismissal Order might be ambiguous regarding whether Debtor was prohibited from using any of the funds in its account or returning Plan Investments prior to the appointment of the Receiver in the State Court Action. While the Dismissal Order stated that funds in the Debtor's accounts were to be turned over to the Receiver, it is undisputed that that the Dismissal Order did not identify whether Debtor was turn over funds as of the date of dismissal or funds as of the date of the appointment of the Receiver. [A007].

Therefore, it was objectively reasonable for Debtor conclude that it was lawful for Debtor to utilize funds in its accounts to (1) pay Special Counsel's compensation in the amounts previously approved by this Court; (2) return investments made solely for and conditionally deposited in connection with the failed Amended Chapter 11 Plan; and (3) fund Debtor's ongoing Property operating expenses.

Moreover, the Plan Investors had deposited funds subject to funding of the third-party loan and the Plan taking effect. *See* Krone Decl. ¶ 6 [A167]. Those funds were not property or funds of Debtor. The Bankruptcy Court had noted at the February 14th Hearing with respect to the equity contributions and GreenLake's lien, "[i]t was a lien on receivables, on real estate. It wasn't on folks walking in that simply wanted to be equity . . ." (2/14/24 Tr., p. 18:14-17).

Further evidencing the ambiguity was the Plan Investors' Motion to Reconsider the Dismissal Order, which was filed on March 13, 2024. [A220]. The Motion to Reconsider sought to clarify the Court's Dismissal Order and set forth numerous rationales for why the Plan Investments could not even be viewed as being part of "Debtors' funds" to be turned over to the Receiver. *Id.*

Moreover, within the four-corners of the Court's February 14, 2024 Order, there is nothing prohibiting Debtor from returning the Investor Funds, which had only been deposited in expectation of the Amended Chapter 11 Plan proceeding. [A007]. Given that there was no unambiguous specific command from the Court, Debtor cannot be held in contempt for returning the funds which rightfully belonged to the Plan Investors. *See NLRB*, 62 F.4th at 1052-53; *D. Patrick.,* 8 F.3d at 460; *Stotler,* 870 F.2d at 1163.

Because an objectively reasonable basis existed to conclude that Debtor's returning those funds might be lawful, the Bankruptcy Court finding Debtor in contempt was error.

### III. The Court erred in finding that Debtor failed to purge the contempt.

The purpose of civil contempt proceedings is to "secure compliance with a prior court order." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). At the May 15th Hearing, the Bankruptcy Court, stated that if Debtor provided an accounting, "it would go a long way towards" purging any

contempt by Debtor. (5/15/24 Tr., p. 30:2-22; 37:7-10). The Bankruptcy Court then ordered Debtor to provide an accounting for the month of February 2024. [A259].

At the June 5th Hearing, GreenLake's counsel confirmed that compliance, stating to the Court that it had received the February bank statements that Debtor has "now complied with the request for accounting in accordance with Your Honor's last order." (6/5/24 Tr., p. 3:5-7). Despite Debtor's compliance, the Bankruptcy Court still "felt that [its] order wasn't complied with," and set the matter for the contempt hearing. (6/5/24 Tr., p. 9:23-25). Even at the July 10, 2024 contempt hearing, GreenLake's counsel again confirmed that Debtor did send the accounting, and the Bankruptcy Court acknowledge that "maybe we're done." (7/10/24 Tr., p. 20:13-17).

Despite Debtor's compliance, GreenLake's counsel still requested, and the Bankruptcy Court entered, a bar on Debtor's refiling a chapter 11 petition for a period of 180 days, based on, as GreenLake's counsel stated, "what's gone on." (7/10/24 Tr., p. 23:16-24:4). This bar on refiling for a 180-day period was error, given that Debtor had complied with the Court's orders for an accounting and should have been deemed to have purged any contempt.

## IV. The Bankruptcy Court abused its discretion in barring Debtor from refiling a chapter 11 petition for a period of 180 days because there was no finding that Debtor willfully abused the judicial process.

Any sanctions imposed pursuant to a court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or

otherwise conducted the litigation in bad faith. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *See also Fuery v. City of Chi.*, 900 F.3d 450, 463 (7th Cir. 2018). Bad faith conduct for purposes of sanctions refers to conduct that is either intentional or in reckless disregard of the law or a court's order. *See Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).

Moreover, a bar on refiling of a bankruptcy petition, as provided in Section 109(g)(1) and Section 349(a) of the Bankruptcy Code, is based on in a willful failure to follow court orders. 11 U.S.C. §109(g)(1); 11 U.S.C. § 349(a). Under Section 109(g)(1) of the Bankruptcy Code, courts may impose a 180-day refiling bar if a case is due to a debtor's willful failure to abide by orders of the court. 11 U.S.C. §109(g)(1) ("no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if. . . the case was dismissed by the court for **willful failure of the debtor** to abide by orders of the court") (emphasis added).

Under section 349(a), a court may preclude a debtor from refiling after the dismissal order, upon a finding of "cause." 11 U.S.C. § 349(a) ("Unless the court, **for cause**, orders otherwise, the dismissal of a case under this title . . . prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.") (emphasis added); *See also In re Gibas*, 543 B.R. 570, 600 (Bankr. E.D. Wis. 2016) (collecting cases imposing refiling bars).

Here, the Bankruptcy Court failed to consider any of the specific circumstances or make any specific findings regarding whether Debtor's return of Investor Funds was a willful failure to abide by the orders of the Bankruptcy Court. Because there was no finding of Debtor's willful abuse of the judicial process, the Bankruptcy Court's barring Debtor from refiling a chapter 11 petition in any bankruptcy court for a period of 180 days day was error.

## **CONCLUSION**

There was no clear and convincing evidence that Debtor willfully failed to comply with an unambiguous order, and the Bankruptcy Court abused its discretion in sanctioning Debtor by barring Debtor from refiling a chapter 11 petition in any bankruptcy court for a period of 180 days.

Accordingly, Debtor-Appellant Platform II Lawndale LLC respectfully submits that this Court (i) vacate the Bankruptcy Court's finding of contempt, and (ii) vacate the Bankruptcy Court's sanction barring Debtor from refiling a chapter 11 petition in any bankruptcy court for a period of 180 days.

Dated: September 23, 2024           Respectfully submitted,


PLATFORM II LAWNDALE LLC

By: */s/ Kevin A. Sterling*
     One of Its Attorneys


Kevin A. Sterling (#6216907)
Laura Newcomer Cohen (#6302639)
THE STERLING LAW OFFICE LLC
112 S. Sangamon, Suite 101
Chicago, Illinois 60607
Ph: (312) 670-9744
kevin@thesterlinglaw.com
laura@thesterlinglaw.com

25

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney certifies that this brief has been prepared in 14-point Times New Roman font, a proportionally spaced typeface, and contains 5,719 words according to the count of Microsoft Word, including all footnotes and excluding all parts of the Appellant's Brief that are exempted from the restrictions under Bankruptcy Rule 8015(a)(7) by Bankruptcy Rule 8015(g). Accordingly, the brief complies with Bankruptcy Rule 8015(a)(7).

Dated: September 23, 2024          Respectfully submitted,

PLATFORM II LAWNDALE LLC

By: */s/ Kevin A. Sterling*
     One of Its Attorneys

Kevin A. Sterling (#6216907)
Laura Newcomer Cohen (#6302639)
THE STERLING LAW OFFICE LLC
112 S. Sangamon, Suite 101
Chicago, Illinois 60607
Ph: (312) 670-9744
kevin@thesterlinglaw.com
laura@thesterlinglaw.com

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on September 23, 2024, he caused a true and correct copy of the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants, resulting in service upon all counsel of record.

*/s/ Kevin A. Sterling*
Kevin A. Sterling